**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 07a0191n.06
Filed: March 12, 2007

No. 05-4633

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| **TONIN SHKRELI**, | ) | |
| | ) | ON PETITION FOR REVIEW |
| *Petitioner*, | ) | OF AN ORDER OF THE |
| | ) | BOARD OF IMMIGRATION |
| v. | ) | APPEALS |
| | ) | |
| **ALBERTO R. GONZALES**, Attorney General, | ) | **O P I N I O N** |
| | ) | |
| *Respondent.* | ) | |
| | ) | |

BEFORE:    COLE, CLAY, and GILMAN, Circuit Judges.

**R. GUY COLE, JR., Circuit Judge.**  Tonin Shkreli petitions this Court for review of a final

order of the Board of Immigration Appeals ("BIA"), affirming an Immigration Judge's ("IJ's")

decision to deny Shkreli's application for asylum, withholding of removal, and protection under the

United Nations Convention Against Torture ("CAT").  For the reasons set forth below, we **DENY**

Shkreli's petition for review.

## I.  BACKGROUND

Tonin Shkreli is a native and citizen of Albania, who entered the United States on October

11, 2000 at Brownsville, Texas.

Shkreli was born in 1980 in the small village of Bzhete, located in northern Albania.  Shkreli

seeks asylum on the grounds that his family has endured fifty years of persecution in Albania owing

to their anti-communist activism and, more recently, their involvement with Albania's Democratic Party, which rivals the country's Socialist Party. Less centrally, Shkreli also asserts that his family has been persecuted in connection with the practice of their Catholic faith. All four of Shkreli's siblings now reside in the United States, and his sister, Albana Dokaj, has been granted asylum here. Shkreli's parents remain in Albania.

According to Shkreli's asylum application, his family's history of opposing Albania's communist dictatorship began with his grandfather and great uncle. Both were imprisoned and tortured for their political activities, and Shkreli's great uncle was tortured to death in jail. Shkreli's father continued the legacy of anti-communist advocacy, and suffered persecution as a result, including a five-year incarceration at a prison labor camp where he was regularly beaten. This detention prevented Shkreli's father from meeting one of his daughters, Shkreli's sister, until she was almost six years old. Shkreli's brothers and sisters also participated in Albania's pro-democracy movement and worked on behalf of Albania's Democratic Party in the wake of communism's collapse. Shkreli's father and sister Albana were detained and beaten in connection with their participation in a demonstration following the 1997 electoral victory of the Socialist Party.

Shkreli accompanied Albana to political events that she attended, but due to a cognitive disability, he has never been a political activist. Shkreli's disability was brought about by an illness he suffered as a baby, apparently in connection with an immunization that was administered to him. His parents sought medical assistance, but were turned away, allegedly as retaliation for their anti-communist sympathies. Ismail Sendi, a U.S. physician who examined Shkreli, opined in an unsworn letter to the IJ that Shkreli falls within the "moderate range of Mental Retardation" due to a "post

encephalitic condition, an illness he may have experienced during the first three years of development."

When he reached school age, Shkreli's father tried to get him admitted to a school that handles special-needs children, but Shkreli was rejected because his father was considered an "enem[y] of [the] government." His father then enrolled Shkreli in the regular school, but Shkreli left after just four years because the teachers professed their inability to educate him.

The IJ held a merits hearing on Shkreli's asylum application on August 30, 2004. Shkreli called only one witness to testify on his behalf, his sister Albana.

Albana confirmed the history of political persecution that her family had suffered in Albania due to their political activities. She also testified about her parents' inability to obtain medical treatment for Shkreli when he fell ill as a baby and her father's unsuccessful efforts to enroll Shkreli in a special-needs school. Albana testified that admittance to such schools required the assistance of the government and given her family's anti-communist background, they were precluded from receiving such help.

Albana also elaborated upon a December 1998 episode, described by Shkreli in his asylum application, that prompted Shkreli's father to send Shkreli and Albana out of Bzhete for their safety. Albana testified that she and Shkreli were driving home from church one evening when they were stopped by five individuals. One of the five was a man named Ramadan, an "investigator," according to Albana, who spied on the villagers of Bzhete and reported on their activities. The group beat Albana and Shkreli and pushed Shkreli onto the ground, dislocating his arm. They warned Albana and Shkreli to quit speaking out on behalf of democracy and the Catholic Church. Then they

stole the car, forcing Albana and Shkreli to walk the rest of the way home. The entire encounter lasted ten to twenty minutes.

After the attack, Shkreli's father complained to the Democratic Party and the Catholic Church and the family began receiving death threats as well as kidnapping threats directed at Shkreli's younger sister, Liza. A few weeks later, at the end of December, Shkreli's father took Albana and Shkreli to live with their aunt in Lezhe City, about a two-hour drive from Bzhete. Shkreli remained there until he left for the United States in October 2000.

The IJ denied Shkreli's application for asylum, withholding of removal, and protection under the CAT in an oral decision announced on August 30, 2004. The BIA affirmed in a summary opinion on November 29, 2005. Shkreli timely appealed.

## II. DISCUSSION

### A. Standard of Review

Where the BIA adopts the IJ's reasoning in a summary disposition, we review the IJ's decision to determine if the BIA's affirmance should be upheld. *Denko v. INS*, 351 F.3d 717, 723 (6th Cir. 2003). We review the IJ's determination under a substantial-evidence standard such that we will not disturb the IJ's findings provided they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992) (quoting 8 U.S.C. § 1105a(a)(4)); *Namo v. Gonzales*, 401 F.3d 453, 456 (6th Cir. 2005). We will reverse only if we find "that the evidence not only supports a contrary conclusion, but indeed *compels* it." *Rreshpja v. Gonzales*, 420 F.3d 551, 554 (6th Cir. 2005) (quoting *Klawitter v. INS*, 970 F.2d 149, 152 (6th Cir. 1992)); *Ouda v. INS*, 324 F.3d 445, 451 (6th Cir. 2003) (stating that an

asylum applicant must show "that the evidence presented was so compelling that no reasonable factfinder could fail to find the requisite persecution or fear of persecution").

**B.      Asylum Claims Based on Political Persecution**

Asylum applications are reviewed under a two-part test. First, the IJ must determine whether the petitioner qualifies as a "refugee" within the meaning of the Immigration and Nationality Act ("INA"). 8 U.S.C. § 1158(b)(1)(A); *Perkovic v. INS*, 33 F.3d 615, 620 (6th Cir. 1994). Second, the IJ asks whether the petitioner merits a favorable exercise of discretion by the Attorney General. *Id.* The petitioner bears the burden of proof at both stages. *Pilica v. Ashcroft*, 388 F.3d 941, 950 (6th Cir. 2004) (citing *Klawitter*, 970 F.2d at 151).

The INA defines a "refugee" as any person who is unable or unwilling to return to his home country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). "In order to demonstrate that he qualifies as a refugee, an alien must establish either that he has suffered actual past persecution or that he has a well-founded fear of future persecution." *Pilica*, 388 F.3d at 950 (citations omitted); *see also Gilaj v. Gonzales*, 408 F.3d 275, 283 (6th Cir. 2005).

1.      Past Persecution

Shkreli contends that he has presented sufficient evidence showing that he was persecuted in Albania on account of his family's political activism, and that the IJ erred in concluding otherwise. In support, Shkreli points to evidence of harassment, imprisonment, and torture that some of his family members have endured as a result of their long-time pro-democracy advocacy. Shkreli also

cites the denial of medical treatment that left him mentally disabled, the government's refusal to place him in a special-needs school, and the December 1998 incident in which he and his sister were attacked by a group of people on their way home from church. Shkreli argues that the IJ failed to consider this evidence in the aggregate, and instead improperly concluded that Shkreli had presented sufficient evidence of only a single instance of persecution—the December 1998 attack—which the IJ deemed insufficient to give rise to a finding of past persecution.

We find no error in the IJ's interpretation of the evidence. As an initial matter, the IJ acknowledged that Shkreli's description about the persecution his family suffered under Albania's communist regime is "consistent with the known country conditions and the Court would have no reason to doubt this." However, Shkreli "cannot rely solely on the persecution of his family members to qualify for asylum." *Akhtar v. Gonzales*, 406 F.3d 399, 406 (6th Cir. 2005) (quoting *Ciorba v. Ashcroft*, 323 F.3d 539, 545 (7th Cir. 2003)) (holding that petitioner, who was not politically active, could not establish a well-founded fear of persecution on the basis of the politically motivated murder of his father). In the absence of evidence showing "a pattern of persecution tied to [Shkreli] himself," we decline to conclude that the acts of persecution suffered by Shkreli's family can be imputed to him. *Id.* (quoting *Gebremaria v. Ashcroft*, 378 F.3d 734, 739 (8th Cir. 2004); *see also Almuhtaseb v. Gonzales*, 453 F.3d 743 (6th Cir. 2006) (affirming judgment that the petitioner had not established past persecution in connection with her family's political involvement where her father was jailed six times, her siblings were shot, and other relatives were killed).

On the same note, Shkreli may not obtain asylum just because Albana's application for asylum was granted. Favorable adjudications on the asylum applications of even immediate family

members, however, is not dispositive of any petitioner's application. *Almuhtaseb*, 453 F.3d at 745 (affirming decision denying withholding of removal even where the petitioner's siblings had been granted asylum); *Akhtar*, 406 F.3d at 402 (affirming denial of asylum even where the petitioner's mother had been granted asylum).

Second, a reasonable factfinder would not be compelled to make a finding of persecution based on the inability of Shkreli's parents to obtain necessary medical attention for him when he fell ill as a baby, or their inability to arrange suitable schooling for him. The IJ properly concluded that Shkreli failed to adduce sufficient evidence documenting these events and showing that they occurred because of his family's political activism.

Based on his observations of Shkreli, Albana's testimony, and the letter from Dr. Sendi opining that Shkreli is moderately mentally retarded, the IJ had no trouble concluding that Shkreli suffers from a cognitive impairment. The IJ also credited Shkreli's assertion that he "had an immunization that went bad," which led to his disability. (*Id.*) However, the IJ found that the only evidence suggesting that Shkreli was denied medical treatment came from Albana, who did not testify that her brother was turned away from the hospital due to her parents' political opinions. The IJ also found Albana's testimony that the government blocked her father's efforts to enroll Shkreli in a special-needs school insufficient to establish that this constituted persecution. As to both the medical and educational issues, the IJ reasoned that Albana's testimony was inconclusive because, since she is only two years older than Shkreli, she would have been too young at the time the relevant events occurred to have observed them first-hand; her testimony, therefore, was hearsay. (*Id.*)

The IJ did not err in concluding that the lack of corroborating documents is fatal to Shkreli's

claim of past persecution based on the deprivation of medical treatment and educational opportunity. Although corroborating documents are not necessary if an asylum petitioner is deemed credible, their absence may give rise to a finding that the petitioner has failed to carry his burden if the documents are "the type that would normally be created or available in the particular country and [are] accessible" to the petitioner. *Dorosh v. Ashcroft*, 398 F.3d 379, 383 (6th Cir. 2004). The IJ properly reasoned that Shkreli should have obtained supporting affidavits from his parents, who presumably could have substantiated his allegations and linked the harm that befell Shkreli to the family's political views. Shkreli does not argue that he was reasonably foreclosed from obtaining corroborative testimony from his parents and, in any event, the record would likely belie any such contention: Albana testified that she was last in contact with her parents just two or three months prior to Shkreli's asylum hearing and that she had visited them in Montenegro in 2002 or 2003. Thus, there is no reason to think that Shkreli's parents were out of his reach for purposes of compiling his asylum record.

Finally, what remains of Shkreli's claim of past persecution is the December 1998 attack upon Shkreli and Albana as they drove home from church. The IJ concluded that this was the only incident supported by adequate evidence, but that it did not rise to the level of persecution. We agree.

"[P]ersecution" within the meaning of 8 U.S.C. § 1101(a)(42)(A) "requires more than a few isolated incidents of verbal harassment or intimidation, unaccompanied by any physical punishment, infliction of harm, or significant deprivation of liberty." *Mikhailevitch v. INS*, 146 F.3d 384, 390 (6th Cir. 1998). "*Mikhailevitch* has not been interpreted as 'suggesting that physical punishment is

in all cases *sufficient* for finding persecution.'" *Gilaj*, 408 F.3d at 284 (quoting *Gjokic v. Ashcroft*, 104 Fed. Appx. 501, 505 (6th Cir. 2004). Here, Shkreli's attackers beat him, dislocated his arm, and stole the car that he and Albana were driving in. Although odious, this single instance of violence does not compel a finding that Shkreli was persecuted. Indeed, our cases have required a far more substantial pattern of inhumane treatment to show past persecution. In *Gilaj*, for example, this Court reversed the BIA's determination that the Albanian petitioner had not established past persecution where she credibly testified that she was beaten by police and threatened with suffocation and death during two forcible searches of her home; police deprived her of nourishment during a two-day detention; she was the victim of a sexual assault or attempted sexual assault; and she and her family were subjected to numerous death threats, as recently as a month prior to fleeing Albania. 408 F.3d at 279-81. Similarly, in *Ouda*, we held that the evidence compelled a finding of past persecution where the Palestinian petitioner credibly testified that in Kuwait her family was denied basic necessities, such as the right to buy food and water; her father was prohibited from working; she and her family could not leave their home because armed bands of men roamed the streets abusing Palestinians; and she and her family were ordered to leave Kuwait. 324 F.3d at 448-49.

Shkreli's claim rests on far less severe circumstances than those presented in *Gilaj* and *Ouda*. The evidence does not compel a conclusion contrary to that reached by the IJ.

2.      Future Persecution

We now turn to the question of whether Shkreli has established a well-founded fear of future persecution. If an asylum applicant establishes past persecution, it is presumed that he has a well-founded fear of future persecution. 8 C.F.R. § 208.13(b)(1). The Government may rebut that

presumption, however, by showing by a preponderance of the evidence either (1) that there has been a fundamental change in country conditions such that the applicant no longer has a well-founded fear of being persecuted, or (2) that the applicant could avoid future persecution by relocating to another part of the applicant's home country.  8 C.F.R. § 208.13(b)(1)(i).

A petitioner may still be able to show a well-founded fear of future persecution even if he has failed to establish past persecution.  To do so, the petitioner must show that (1) he fears persecution in his home country on account of race, religion, nationality, membership in a particular social group, or political opinion; (2) there is a reasonable possibility of suffering such persecution if he returned to that country; and (3) he is unable or unwilling to return because of such fear.  8 C.F.R. § 208.13(b)(2).  "A well-founded fear of persecution thus has both a subjective and an objective component: an alien must actually fear that he will be persecuted upon return to his country, and he must present evidence establishing an objective situation under which his fear can be deemed reasonable."  *Pilica*, 388 F.3d at 950 (internal quotation marks omitted).

As an initial matter, Shkreli predicated his future-persecution claim before the BIA, and now before this Court, exclusively on the proposition that he established past persecution and therefore is entitled to a presumption of having a well-founded fear of future persecution.  Consequently, even if Shkreli did press before this Court a future-persecution claim untethered to a finding of past persecution, we would be jurisdictionally barred from considering it.  *See* 8 U.S.C. § 1252(d)(1) ("A court may review a final order of removal only if . . . the alien has exhausted all administrative remedies available to the alien as of right . . . ."); *Liti v. Gonzales*, 411 F.3d 631, 641 (6th Cir. 2005).

As described above, substantial evidence supports the IJ's conclusion that Shkreli has not

- 10 -

established past persecution. We therefore cannot presume that Shkreli has a well-founded fear of future persecution. Even if such a presumption were warranted, however, the IJ did not err in holding that the Government has successfully rebutted it.

First, the Government submitted State Department country reports which explain that modern-day Albania does not exhibit signs of political and religious persecution. *Sterkaj v. Gonzales*, 439 F.3d 273, 276 (6th Cir. 2006) (relying on State Department country reports for Albania in denying the asylum applicant's petition for review); *Mullai v. Ashcroft*, 385 F.3d 635, 639 (6th Cir. 2004) (quoting *Kokaj v. Ashcroft*, 100 Fed. App'x 506, 508 (6th Cir. 2004)) (characterizing State Department reports as "generally the best source of information on conditions in foreign nations").

The State Department's 2004 "Profile of Asylum Claims and Country Conditions" acknowledges that during much of the twentieth century, Albanians suffered under an "exceptionally repressive and idiosyncratic Communist regime." However, the report goes on to state that Albania has made steady progress toward institutionalizing democratic norms since the collapse of communism beginning in 1990. Albania experienced a tumultuous and violent period in 1997-1998 provoked by an economic collapse, but has rebounded both politically and economically since then. The report states that "the available evidence suggests that neither the Government nor the major political parties engage in policies of abuse or coercion against their political opponents . . . [and] there are no indications of systemic political persecution in Albania at the present time." Indeed, this Court has expressly held that circumstances in Albania do not support asylum-seekers' claims that they will be persecuted if forced to return. *Macotaj v. Gonzales*, 424 F.3d 464, 465 (6th Cir. 2005)

- 11 -

(stating that "despite whatever political repression [petitioner] and his family may have suffered in the past, conditions in Albania have changed to such an extent that [petitioner] no longer has reason to fear persecution upon return to his homeland"). Furthermore, Shkreli's parents have continued to reside in Albania and Shkreli has not introduced any evidence indicating that they have been subjected to ongoing harassment or abuse due to their political opinions. These facts undermine Shkreli's claim for asylum. *Gumbol v. INS*, 815 F.2d 406, 413 (6th Cir. 1987) (noting, as support for the conclusion that petitioner had not established future persecution, that petitioner's family continued to live in Iraq, "apparently unharmed").

Second, the Government also has rebutted the presumption of future persecution by pointing to evidence that shows that Shkreli could avoid any problems by residing in a different part of Albania from where he grew up. Following the December 1998 attack on Shkreli and his sister, Shkreli's father took the two to live with their aunt in Lezhe City, located about a two-hour drive from Bzhete. Shkreli lived there for more than a year-and-a-half before coming to the United States. There is no record evidence showing that he experienced any difficulties while living in Lezhe City. Shkreli challenges this reasoning by arguing that it is improper to conclude that he could live safely elsewhere in Albania because there is equally no evidence showing that he did *not* suffer persecution in Lezhe City. This argument is meritless. Shkreli bore the burden of establishing his eligibility for asylum. The IJ properly based his conclusion on what the evidence demonstrated, not, as Shkreli would have it, on what it did not demonstrate.

## C.    Asylum Claims Based on Religious Persecution

As a subsidiary issue, Shkreli asserts in his asylum application that his family also suffered

- 12 -

persecution on account of their Catholic faith. Religious exercise was prohibited under the Communist regime, but Shkreli's father worked to open Catholic churches. In 1990, Shkreli's father, uncle, and brother were arrested and tortured after bringing a priest to their village to celebrate mass. Albana testified that the December 1998 attack upon her and Shkreli occurred as they were coming home from church and that their attackers instructed them "not to speak out" about religion. She also vaguely testified that her family experienced "problems" due to their "religious activity."

For the same reasons that Shkreli has failed to establish past persecution and future persecution in connection with his family's political activism, he has failed to establish persecution in connection with their religion. He has not adequately corroborated his allegations with affidavits from his parents or other siblings; other than the December 1998 encounter, which is insufficiently severe to give rise to a finding of persecution, he has not shown a pattern of harassing or abusive incidents targeted at him; and he has not contradicted the State Department's conclusion that Albania is a religiously tolerant country. We are therefore not compelled to reverse the findings of the IJ.

## D.    Humanitarian Asylum

Finally, Shkreli contends that even if he has not satisfied the standard test for asylum eligibility, he nonetheless should be granted asylum on humanitarian grounds. A petitioner may qualify for humanitarian asylum by showing (1) compelling reasons for being unwilling or unable to return to his home country arising out of the severity of the past persecution, or (2) that there is a reasonable possibility that he may suffer other serious harm upon removal to that country. 8 C.F.R. § 1208.13(b)(1)(iii)(A) & (B).

Shkreli cannot avail himself of these provisions because this Court has held that to qualify

for asylum on humanitarian grounds, the petitioner must show past persecution. *Rreshpja*, 420 F.3d at 556. Although 8 C.F.R. § 1208.13(b)(1)(iii)(B) makes no mention of past persecution, as does subpart (A), the Justice Department has explained that subpart (B) also is contingent upon a showing of past persecution. *See Liti*, 411 F.3d at 642 (commenting that the Justice Department has described the purpose of subpart (B) as authorizing the grant of asylum relief to petitioners "*who have suffered persecution in the past* and who are at risk of future harm that is not related to a protected ground") (emphasis added). For the reasons described above, Shkreli has not established past persecution and therefore his claim for humanitarian asylum also fails.

**E.     Withholding of Removal and Protection Under the CAT**

The IJ also denied Shkreli's claims for withholding of removal and protection under the CAT. Shkreli, however, has not challenged these portions of the IJ's decision before the BIA or this Court. We therefore lack jurisdiction to consider whether the IJ erred as to either issue since Shkreli did not exhaust his administrative remedies by presenting them to the BIA. *See* 8 U.S.C. § 1252(d)(1); *Liti*, 411 F.3d at 641. Further, even if they were not jurisdictionally barred, Shkreli's failure to raise them before this Court constitutes a waiver. *United States v. Layne*, 192 F.3d 556, 566-67 (6th Cir. 1999) (holding that arguments that are not raised or that are not accompanied by factual and legal support are deemed waived).

### III.  CONCLUSION

For the foregoing reasons, we **DENY** Shkreli's petition for review of the BIA's decision.

- 14 -