**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 13a0973n.06**

**No. 13-3086**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| RISHARD IBRAHIM, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | **FILED** |
| v. | ) | Nov 13, 2013 |
| | ) | DEBORAH S. HUNT, Clerk |
| ERIC H. HOLDER, JR., Attorney General of | ) | ON PETITION FOR REVIEW OF A |
| the United States, | ) | FINAL ORDER OF THE BOARD OF |
| | ) | IMMIGRATION APPEALS |
| Respondent. | ) | |

Before: MOORE, GIBBONS and SUTTON, Circuit Judges.

SUTTON, Circuit Judge. Rishard Ibrahim, a native and citizen of Sri Lanka, seeks review of an order of the Board of Immigration Appeals rejecting several requests for relief. For the reasons that follow, we deny the petition for review.

I.

Ibrahim first encountered the Liberation Tigers of Tamil Eelam, a Sri Lankan separatist group known informally as the Tamil Tigers, during high school. He led his school's cadet corps, a youth military training program sponsored by the Sri Lankan government. The Tamil Tigers disapproved of the program, and Ibrahim transferred schools in 1979 because he feared retaliation. But the Tamil Tigers had a presence at Ibrahim's new school too, one he opposed (among other ways) by attending school when the group ordered boycotts to protest the government. Ibrahim

received threats due to his opposition and dropped out of school in 1980 because he "could not concentrate on [his] studies." AR at 255. For the next five years, Ibrahim lived in fear of the Tamil Tigers' forceful recruitment of young people. Notwithstanding this fear, he and others organized a protest in 1985. The Tamil Tigers fired into the crowd of protestors, killing two of Ibrahim's friends.

That is when Ibrahim left his hometown of Akkaraipattu on the eastern coast of Sri Lanka for Colombo, a large city on the western coast. He lived there safely for two years but returned to Akkaraipattu in 1987 to help run the family farm. Once there, he joined the Muslim Congress, a group that opposed the Tamil Tigers. In 1990, Ibrahim and a group of Muslim Congress members stood and talked outside the home of Ali Uthuman, a Muslim Congress member who sat on the Provincial Council. A gunman arrived and shot Uthuman. Ibrahim recognized the gunman as Ilango, a former classmate turned Tamil Tiger. As Ibrahim tried to help Uthuman, Ilango hit him on the shoulder with the butt of his gun and ran away. The blow dislocated Ibrahim's shoulder, and he spent a few days in the hospital recovering.

In 1992, Ibrahim returned again to Colombo. But in May of that year, as he and a friend walked along a crowded sidewalk, someone pushed him into the street. Just then, a motorcycle sped by. Ibrahim's friend told Ibrahim that he recognized the person who pushed Ibrahim as a friend of Ilango. Unharmed but rattled, Ibrahim left Sri Lanka and illegally entered the United States.

When the Department of Homeland Security initiated removal proceedings against Ibrahim,

he applied for asylum, withholding of removal and relief under the Convention Against Torture. The Immigration Judge denied Ibrahim's applications for relief, discounting his credibility and finding that his experiences in Sri Lanka did not rise to the level of past persecution. The judge also found that conditions in Sri Lanka had stabilized since Ibrahim left the country due to the Sri Lankan government's defeat of the Tamil Tigers, meaning Ibrahim had not shown a well-founded fear of future persecution.

The Board rejected Ibrahim's appeal. It agreed with the judge's credibility determination. Even assuming Ibrahim's credibility, it alternatively found that he had "not establish[ed] past persecution or a well-founded fear of future persecution." *Id.* at 5.

## II.

To obtain asylum, Ibrahim must show that he cannot return to Sri Lanka "because of persecution or a well-founded fear of persecution on account of" his religion (Islam), membership in a particular social group (Muslim Tamils) or political opinion (membership in the Muslim Congress). 8 U.S.C. §§ 1101(a)(42)(A), 1158(b)(1)(A). Because the Board adopted the Immigration Judge's decision and added reasons of its own, we review the judge's decision along with the Board's additional comments. *See Gilaj v. Gonzales*, 408 F.3d 275, 283 (6th Cir. 2005). Their factual findings stand so long as they are supported by substantial evidence, so long in other words as the evidence does not "compel[]" a contrary conclusion. *INS v. Elias-Zacarias*, 502 U.S. 478, 481 n.1 (1992) (emphasis omitted); *see also* 8 U.S.C. § 1252(b)(4)(B).

Even if we accept Ibrahim's credibility for the purposes of this appeal, substantial evidence supports the findings that he proved neither past persecution nor a well-founded fear of future persecution upon return to Sri Lanka. Start with past persecution. The immigration laws require Ibrahim to show that he "was specifically targeted" and not merely the victim of "indiscriminate abuse" to establish past persecution. *Gilaj*, 408 F.3d at 285. He also must show that these events "go beyond what might reasonably be characterized as mere harassment." *Id.*

In trying to meet this standard, Ibrahim points to the shootings at the 1985 protest, his shoulder injury in 1990 and the motorcycle incident in 1992. The 1985 shootings did not target Ibrahim and thus do not establish persecution. He testified that the shooters "opened fire" on the protestors and "chased" them as they ran away. AR at 142. As Ibrahim and two friends jumped over a fence to escape, his friends were shot. Ibrahim cut himself on the fence but otherwise escaped unharmed. This kind of "violence employed against a crowd of demonstrators" by definition does not establish *targeted* persecution. *Gilaj*, 408 F.3d at 285. The record supports the Immigration Judge's conclusion that "it does not appear that [Ibrahim] was targeted specifically." AR at 39.

Nor does Ibrahim's dislocated shoulder establish persecution. In the absence of a statutory definition of persecution, our cases define the term "mostly by identifying what does *not* count." *Japarkulova v. Holder*, 615 F.3d 696, 699 (6th Cir. 2010) (emphasis in original). Though unfortunate and surely painful, "a single beating does not *compel* a finding of persecution." *Gilaj*, 408 F.3d at 284 (quotation omitted). We have held that similar, indeed more extreme, acts of

violence do not establish past persecution. *See Shkreli v. Gonzales*, 219 F. App'x 474, 479 (6th Cir. 2007) (finding no persecution where attackers beat applicant, dislocated his arm and stole his car); *see also Lumaj v. Gonzales*, 462 F.3d 574, 577 (6th Cir. 2006) (same where men attacked the applicant, beat her, forced her into a car and attempted to kidnap her). In view of these precedents, the record does not compel a finding of past persecution based on this incident.

The same goes for the events in Colombo in 1992. Ibrahim's testimony supports one of two conclusions. Either someone happened to push Ibrahim into the street as a motorcycle sped by (not persecution) or the Tamil Tigers tried and failed to kill Ibrahim (likely persecution). To reach the second conclusion, one must agree with Ibrahim that: (1) the motorcycle rider was likely a member of the Tamil Tigers because the group owned motorcycles similar to the one that almost hit him; (2) the man who pushed him, whom Ibrahim's friend identified as a friend of a Tamil Tiger, also belonged to the group; and (3) those two decided the best plan of attack involved pushing Ibrahim in front of the motorcycle, risking the rider's life in the process. This second conclusion, the only one that could help Ibrahim, "requires several inferential leaps that strain the boundaries of circumstantial evidence." *Pablo-Sanchez v. Holder*, 600 F.3d 592, 595 (6th Cir. 2010). The record did not require the Immigration Judge or the Board to take those leaps. *Id.* Nor do these events, each insufficient to establish persecution standing alone, require a finding of persecution when considered together.

In the absence of a presumption of future persecution that follows a finding of past persecution, *see* 8 C.F.R. § 1208.13(b)(1), Ibrahim must establish a well-founded fear of future

persecution. This requires an objectively reasonable fear of the possibility of persecution upon his return to Sri Lanka. *See Dieng v. Holder*, 698 F.3d 866, 872 (6th Cir. 2012). Here too he has not met his burden.

Ibrahim relies mainly on evidence that "problems . . . still exist in the country." App. Br. at 26. Yet persecution, whether past or future, requires harm aimed at the applicant. For that reason, evidence of general unrest—a risk shared by all citizens—does not support a reasonable fear of future persecution. *See Almuhtaseb v. Gonzales*, 453 F.3d 743, 750 (6th Cir. 2006).

When Ibrahim claims a fear of individualized persecution, he does so in general terms and without supporting evidence. A reasonable fear of future persecution requires more than "mere assertions of fear of possible persecution or speculative conclusions," namely "specific information showing a real threat." *Dieng*, 698 F.3d at 872. Ibrahim explains that he "fears those that were after him" before he left and that he "would likely face problems" if he returned. App. Br. at 26. But the Sri Lankan government defeated the group he fears—the Tamil Tigers—in 2009. Ibrahim adds that someone will recognize him when he lands at the airport, but he offered no evidence that the now-defeated Tamil Tigers monitor the airports. Nor did he explain how they would recognize him after over two decades. Ibrahim's "speculative conclusions" do not suffice to convert his subjective fears into objectively reasonable fears. *Dieng*, 698 F.3d at 872.

Even if Ibrahim had established a well-founded fear of persecution in his hometown of Akkaraipattu, he could avoid persecution by living in southern Sri Lanka. An individual who can

avoid persecution by relocating to another area of the country does not have a well-founded fear of future persecution. *See* 8 C.F.R. § 1208.13(b)(2)(ii). Ibrahim testified that conditions in southern Sri Lanka are "okay," a conclusion his own evidence supports. *Id.* at 42, 209–10, 307. Despite Ibrahim's conclusory statement that he cannot "safely and reasonably relocate within Sri Lanka," App. Br. at 26, substantial evidence supports the Immigration Judge's finding that he could avoid future persecution by moving to southern Sri Lanka.

Ibrahim also applied for withholding of removal and relief under the Convention Against Torture. Because Ibrahim did not establish that he is eligible for asylum, he necessarily does not meet the stricter requirements for withholding of removal. *See* 8 C.F.R. § 208.16(b). And Ibrahim has not shown that he will likely be tortured upon his return to Sri Lanka, *id.* § 208.16(c)(2), making him ineligible for relief under the Convention as well.

III.

For these reasons, we affirm.