NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 08a0568n.06
Filed: September 18, 2008

No. 07-3629

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

KAI HUN SIN, ET AL.

       Petitioner,

  vs.

MICHAEL MUKASEY, ATTORNEY
GENERAL OF THE UNITED STATES,

       Respondent.

On Appeal from the United
States District Court for the
Southern District of Ohio

BEFORE:    MOORE, COLE, Circuit Judges; and GRAHAM,[*] District Judge.

GRAHAM, District Judge. Petitioners Kai Hun Sin, his wife, and his two sons petition for review of a final order of removal issued by the Board of Immigration Appeals ("BIA") on April 23, 2007. Sin contends that the BIA decision contained errors of law or was otherwise not supported by substantial evidence. For the reasons stated herein we deny the petition for review.

I. **Procedural History**

The Department of Homeland Security commenced immigration proceedings against Sin, his wife, and his two sons charging them with being subject to removal under Section 237(a)(1)(B) of the Immigration and Nationality Act, 8 U.S.C. § 1227(a)(1)(B), as being aliens present in the United States for a longer time than permitted. Sin, on behalf of himself and his two sons, and his wife conceded removability but sought asylum, withholding of removal, and protection under the

---

[*]The Hon. James L. Graham, United States District Judge for the Southern District of Ohio, sitting by designation.

United Nations Convention Against Torture ("CAT"). The immigration judge ("IJ") consolidated the cases of Sin, his wife, and their two sons, and made Sin the lead applicant.

On October 13, 2005, the IJ issued an oral decision denying Sin's applications for asylum, withholding of removal, and protection under the CAT. The IJ ordered Sin, his wife, and their two sons removed to China. On April 23, 2007, the BIA issued a decision dismissing Sin's appeal. Sin's petition for review in this court followed.

## II. Facts

Petitioners Sin, his wife, and their two sons are natives and citizens of the People's Republic of China ("China"). Sin claims that the Chinese government persecuted him and his family because he rented his apartment to members of the Falun Gong— a movement that blends aspects of Taoism and Buddhism with martial arts meditation. At the removal proceeding held before the IJ, Sin testified that although he does not practice Falun Gong himself, prior to coming to the United States, he rented an apartment he owned in Hong Kong to Falun Gong members.[1] In March 2001, an official from the Chinese government came to Sin's home and asked him to stop renting to Falun Gong. The government official told Sin "not to rent [his] property to the Falun Gong member" and that "if [he] rent[s] it to a Falun Gong member, that means [he is] anti-Chinese government and [he is] supporting the Falun Gong group, and it [will] hurt [his] family members." J.A. 97-98. Sin continued to rent to the Falun Gong members, and in August 2001, the officials from the Chinese government came to Sin's home again and expressed the same message. Sin continued renting to the Falun Gong members, and a few months later, two officials from the Chinese government came with a notice which stated that Sin "need[ed] to stop renting . . . the property to the Falun Gong

---

[1]The facts relating Sin's experiences while in China are based on Sin's testimony at the hearing in front of the IJ, which the IJ found to be credible.

2

member, [or] otherwise it [would] hurt everyone and anyone in [his] family." J.A. 100. After reading the document, Sin became very upset and tore up the document and threw it away.

Sin's wife traveled to the United States first and was admitted on or about June 25, 2002, as a nonimmigrant transit without a visa with authorization to stay only for the day. Sin and his two sons followed and were admitted to the United States on August 12, 2002, as temporary visitors for pleasure with authorization to remain in the United States for a period not to exceed February 11, 2003. Sin, his wife, and their two sons all remained in the country beyond the authorized period of their stay.

After departing Hong Kong, Sin heard through his younger brother, who continued to live in that same apartment building, that the Chinese government was making inquiries regarding Sin's whereabouts. He also learned that the Chinese government threatened his Falun Gong tenants and some of the Falun Gong tenants were arrested. The Falun Gong tenants continue to reside in the apartment and pay rent to Sin by depositing money into his bank account.

### III. Jurisdiction

This court has jurisdiction to review the BIA's April 23, 2007 decision under 8 U.S.C. § 1252(a)(1) which provides the courts of appeals with jurisdiction to review final immigration orders of removal. Venue is proper in this court because the Sixth Circuit Court of Appeals encompasses Cleveland, Ohio, where the proceedings were held via telephone conference. 8 U.S.C. § 1252(b)(2).

### IV. Standard of Review

Asylum analysis involves a two-step inquiry: (1) whether the applicant qualifies as a "refugee" as defined in 8 U.S.C. § 1101(a)(42)(A), and (2) whether the applicant merits favorable exercise of discretion by the IJ. *Patel v. Alberto Gonzales*, 470 F.3d 216, 218 (6th Cir. 2006). The

burden of proving eligibility for asylum rests upon the petitioner. 8 U.S.C. § 1158(b)(1)(B). Regarding the first step, whether the applicant qualifies as a refugee, the United States Supreme Court has held that an IJ's determination must be upheld if "'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992)(quoting 8 U.S.C. § 1105a(a)(4)) (repealed and replaced by 8 U.S.C. § 1252(b)(4)(B)).[2] The Supreme Court explained that to reverse such a finding, the evidence must "not only support [the opposite] conclusion, but compel[] it." *Id*. at n.1. (emphasis omitted). *See also Menendez-Donis v. Ashcroft*, 360 F.3d 915, 918-919 (8th Cir. 2004)(holding that the court must review the entire record when drawing conclusions about the reasonableness of an administrator's findings of fact). Questions of law are reviewed de novo. *Ali v. Ashcroft*, 366 F.3d 407, 409 (6th Cir. 2004).

Regarding the second inquiry, where the Board determines that an alien does not qualify as a "refugee" and that decision is supported by substantial evidence, the court of appeals need not answer whether the alien merits a favorable exercise of discretion with respect to his application for asylum. *Koliada v. INS*, 259 F.3d 482, 488 (6th Cir. 2001). Because this court determines that Sin does not qualify as a refugee, there is no need to determine whether he merits a favorable exercise of discretion.

When the BIA neither adopts nor summarily affirms the IJ's reasoning and provides an explanation for its decision, this court reviews the BIA's decision as the final agency determination.

---

[2]In articulating the "substantial evidence" standard, the Supreme Court quoted directly from 8 U.S.C. § 1105a(a)(4), which has subsequently been repealed and replaced by 8 U.S.C. § 1252(b)(4)(B). Section 1252(b)(4)(B) provides that "administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." "Although articulated differently, '§ 1252(b)(4)(B) basically codifies the Supreme Court's substantial evidence standard.'" *Akhtar v. Gonzales*, 406 F.3d 399, 404 (6th Cir. 2005)(quoting *Yu v. Ashcroft*, 364 F.3d 700, 702 (6th Cir. 2004)).

*Ilic-Lee v. Mukasey*, 507 F.3d 1044, 1047 (6th Cir. 2007).

## V.  **Discussion**

### a.  **Applications for Asylum**

The term "refugee" means a person who is unable or unwilling to return to his or her country because of "persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion."  8 U.S.C. § 1101(a)(42)(A).  Under that definition, therefore, Sin must show that he was either persecuted in the past or has a "well-founded fear" of persecution in the future.

The BIA dismissed Sin's appeal, holding that he did not meet the burden necessary to establish eligibility because he showed neither past persecution nor a well-founded fear of future persecution.  On appeal to this court, Sin raises no error with respect to the BIA's determination that he was not persecuted in the past.  Instead, Sin argues the BIA incorrectly held that he did not show a well-founded fear of future persecution.  Petitioner's Brief, 15-20.  The BIA's decision states the following in relevant part:

> [T]he record fails to establish a well-founded fear of future persecution.  The respondent does not practice Falun Gong nor is he politically active.  He continues to own the apartments in Hong Kong and receive rental payments from the Falun Gong member.  The respondent's brother currently resides at the apartment where the respondent lived and the record does not indicate that any harm has befallen him. While we are sympathetic to respondent's fears, we cannot conclude based upon the evidence of record that he has a well-founded fear of future persecution.

J.A. 3 (internal cites to the transcript omitted).

If Sin can establish past persecution, it is presumed that he has a well-founded fear of future persecution. 8 C.F.R. § 1208.13(b)(1).  Here, because Sin does not appeal the BIA's finding that he was not persecuted in the past, he does not have the benefit of that presumption.  However, he can establish a well-founded fear of persecution under INA regulations by showing (1) that he has a fear

of persecution in his country of origin on account of a protected ground, (2) that there is a reasonable possibility of suffering such persecution if he were to return to that country, and (3) that he is unable or unwilling to return to that country because of such fear. 8 C.F.R. § 1208.13(b)(2)(i); *Mikhailevitch v. INS*, 146 F.3d 384, 389 (6th Cir. 1998).

### i. *Fear of Persecution on Account of a Protected Ground*

In order to establish that Sin has a well-founded fear of persecution, he has to show that he has a fear of persecution *on account of* a protected ground. Here, the BIA's decision recognized that Sin "testified that while he does not practice Falun Gong, he supports those who do." J.A. 2. The BIA also recognized that the Chinese government's threats were based on Sin renting to members of the Falun Gong. J.A. 3. Therefore, the BIA's decision can be reasonably read to have recognized that Sin met the first prong of the well-founded fear test.

Sin argues it was in error for the BIA to state that "the respondent does not practice Falun Gong nor is he politically active" because it demonstrates the BIA mistakenly held that Sin did not have a political opinion. (See Petitioner's brief at 17, citing *INS v. Elias-Zacharias*, 502 U.S. 478, 482 (1992)[3], *Zou v. Gonzales*, 437 F.3d 860, 868-869 (9th Cir. 2006), *Kumar v. Gonzales*, 435 F.3d 1019, 1029 (9th Cir. 2006), and *Gao v. Gonzales*, 424 F.3d 122, 129 (2d Cir. 2005)). Sin argues that the BIA should have recognized the theory of imputed political opinion, which is a theory that applies when "[a] persecutor falsely attributes an opinion to the victim, and then persecutes the victim because of that mistaken belief about the victim's views." *Canas-Segovia v. INS*, 970 F.2d 599, 602 (9th Cir. 1992); *See also Pascual v. Mukasey*, 514 F.3d 483, 488 (6th Cir. 2007) (quoting

---

[3]The Supreme Court did not officially recognize the doctrine of imputed political opinion in this case, noting only that: "Nor is there any indication (*assuming arguendo it would suffice*) that the [persecutors] erroneously *believed* that [the applicant's] refusal was politically based." (emphasis added in the first instance). 502 U.S. at 482.

6

*Canas-Segovia v. INS*, 970 F.2d at 602). Many courts have recognized the doctrine of imputed political opinion, although the Sixth Circuit has yet to officially do so.[4]

Because the BIA's opinion can be reasonably read as recognizing that the Chinese government believed that Sin supported the Falun Gong, we need not reach the issue of imputed political opinion. The BIA's decision notes that Sin "testified that while he does not practice Falun Gong, he supports those who do" and that the Chinese government knew Sin was renting to the Falun Gong. J.A. 2-3. By stating that Sin does not practice Falun Gong, the BIA was simply emphasizing that because Sin himself is not a member of the Falun Gong, he has less to fear than a member would. This language addresses the second prong, whether there was a reasonable basis for Sin's fear, not the first prong, whether that fear was on account of a political opinion.

ii.      *Reasonable Possibility of Suffering Persecution*

In order to establish that Sin has a well-founded fear of persecution, he must also show that there is a reasonable possibility of suffering such persecution if he were to return to China. A well-founded fear of persecution has both a subjective and objective component. The asylum applicant must actually fear he will be persecuted upon return to his country and he must establish that an objective situation exists under which his fear can be deemed reasonable. *Ali v. Ashcroft*, 366 F.3d 407, 410-11 (6th Cir. 2004). Here, the evidence does not compel a conclusion that Sin's fears of the Chinese government were objectively well-founded.

As the BIA noted, Sin is not a practicing member of the Falun Gong nor is he politically active. Sin also continues to receive rental payments from the Falun Gong members, demonstrating

---

[4]The Sixth Circuit has recognized the theory of imputed political opinion in at least one unreported case, but has not officially recognized it in any reported case. *See Pascual*, 514 F.3d at 486-487.

the Chinese government has not sought to interfere with Sin's business relationship with the Falun Gong. Moreover, his brother currently resides at the apartment where Sin lived and the record does not indicate that any harm has befallen him.

Sin argues that the BIA erred in relying on the fact that Sin's brother suffered no harm. Petitioner's Brief, 20. Sin argues that because there was no evidence Sin's brother also supports the Falun Gong, it was irrelevant that he continued to reside in China unharmed. Petitioner's Brief, 20.

The Sixth Circuit has recognized that acts of violence against an asylum applicant's family members may, in certain circumstances, demonstrate a well-founded fear of persecution. *See Akhtar v. Gonzales*, 406 F.3d 399, 405 (6th Cir. 2005). Similarly, an absence of mistreatment is also relevant to determining an asylum applicant's well-founded fear. *See, e.g.*, *Gumbol v. Immigration & Naturalization Service*, 815 F.2d 406, 413 (6th Cir. 1987), *Sall v. Gonzales*, 124 Fed. Appx. 377, 379 (6th Cir. 2005), *Shkreli v. Gonzales*, 219 Fed. Appx. 474, 481 (6th Cir. 2007).

Petitioner argues that *Kumar v. Gonzales*, 435 F.3d 1019, 1030-1031 (9th Cir. 2006)[5], *Vente v. Gonzales*, 415 F. 3d 296, 302 (3rd Cir. 2005), and *Melencio Legui Lim v. INS*, 224 F.3d 929, 935 (9th Cir. 2000) demonstrate that when an applicant's family member is not persecuted, that fact is not relevant to a claim for asylum when there is no evidence that the government authorities suspected the family member of holding the same political opinion or belief for which the applicant claims persecution. Petitioner's Brief, 20. For example, in *Vente v. Gonzales*, 415 F.3d 296, 302 (3rd Cir. 2005), the court held that the status of Vente's family was irrelevant to an inquiry into whether his own fear of persecution was reasonable because there was no evidence the family was ever targeted by paramilitary organizations, as Vente was.

Here, Sin was not the only person threatened by the Chinese government. Sin testified that

---

[5]In *Kumar*, threats were made against the applicant's family members based on the applicant's belief, but the court did not squarely address whether these threats made the fact that the family members were unharmed relevant to the claim for asylum.

the Chinese government specifically threatened his family based on Sin's support of the Falun Gong. Under these circumstances, the BIA could conclude that because Sin's brother was not harmed, Sin and his family likewise will not be persecuted. *See, e.g.*, *Tamayo v. AG of the United States*, 258 Fed. Appx. 471, 475 (3d Cir. 2007)(where threats were made against petitioner and petitioner's family members, the fact that the family members were not harmed was relevant to whether petitioner had a well-founded fear of future persecution).

The remaining evidence in the record likewise does not compel a conclusion that Sin had an objectively reasonable fear of suffering persecution. Persecution "requires more than a few isolated incidents of verbal harassment or intimidation, unaccompanied by any physical punishment, infliction of harm, or significant deprivation of liberty." *Mikhailevitch v. INS*, 146 F.3d 384, 390 (6th Cir. 1998). Here, the record is devoid of any evidence that Sin was threatened with any kind of physical abuse, imprisonment, arrest, or economic hardship. *See id*. (holding applicant had not shown the type of government action severe enough to rise to the level of persecution). Sin has put forth no evidence that upon his return to Hong Kong he will face treatment any more severe than the harassment and vague threats he received in the past or that those threats will materialize into any action that resembles persecution.

In addition, because a well-founded fear of persecution can be based upon what has happened to others who are similarly situated, it is "necessary, in considering an applicant's asylum petition, to weigh evidence of general conditions in the country of origin and the foreign government's history of treatment of others engaged in similar activities." *Perkovic v. INS*, 33 F.3d 615, 621 (6th Cir. 1994). The Chinese government began a crackdown on the Falun Gong in 1999, and in mainland China, the government has incarcerated tens of thousands of practitioners. U.S. Dep't of State, *Country Report on Human Rights Practices*, *2004, China (incl. Hong Kong & Macau) (Feb. 2004)* [hereinafter "Country Report"), J.A. 278. Several hundred Falun Gong adherents have reportedly

9

died in custody due to torture, abuse, and neglect. *Id*.

The situation in Hong Kong, however, is different. Hong Kong is a Special Administrative Region of China and enjoys a high degree of autonomy from the Chinese government, except in matters of defense and foreign affairs. *Id*. at 325. In Hong Kong, although some discrimination exists against Falun Gong, "the Government generally respects the human rights of its residents, and the law and judiciary provide[] effective means of dealing with individual instances of abuse." *Id*. at 325. In addition, in Hong Kong, "Falun Gong practitioners regularly conduct[] public protests against the crackdown on fellow practitioners in China." *Id*. at 329.

In order to reverse the Board's determination, we would have to decide that the evidence would compel a reasonable factfinder to conclude that there is a reasonable possibility that Sin would suffer future persecution if he were to return to China. 8 C.F.R. § 1208.13(b)(2)(B); *Mikhailevitch v. INS*, 146 F.3d at 390. Under these circumstances, and considering the present situation of the Falun Gong in Hong Kong, we are satisfied that the evidence would not compel such a conclusion. Thus, based on the facts before the BIA, we cannot conclude that "any reasonable adjudicator would be compelled to conclude" a contrary result. 8 U.S.C. §1252(b)(4)(B); *See Yu v. Ashcroft*, 364 F.3d 700, 702 (6th Cir. 2004).

### iii.    *Unable or Unwilling to Return Because of Such Fear*

Because Sin has failed to show that he has an objectively reasonable well-founded fear of future persecution, we need not address whether he was unable or unwilling to return to China because of that fear.

### B.  Withholding of Removal

Sin also petitions for review of the administrative denial of his request for withholding of

removal. The BIA dismissed Sin's appeal, holding because he failed to meet the burden necessary to establish eligibility for asylum, he therefore also failed to satisfy the higher standard required for withholding of removal. Pursuant to the provisions of 8 U.S.C. § 1231(b), the burden is on the applicant to establish that his "life or freedom would be threatened in the proposed country of removal on account of the alien's race, religion, nationality, membership in a particular social group, or political opinion." In order to qualify for withholding of removal, the petitioner "must establish that there is a clear probability that he will be subject to persecution if forced to return to the country of removal" *Pilica v. Ashcroft*, 388 F.3d 941, 951 (6th Cir. 2004) and that it is more likely than not that he will be persecuted upon return. *Liti v. Gonzales*, 411 F.3d 631, 641 (6th Cir. 2005) (quoting 8 C.F.R. § 1208.16(b)(2)). Because this burden is "a more stringent burden than what is required on a claim for asylum," *Id*. at 640 (quoting *Pilica*, 388 F.3d at 951), Sin's failure to establish his eligibility for asylum likewise results in his failure to satisfy the more onerous burden for withholding of removal. *See, e.g., Koliada v. INS*, 259 F.3d 482, 489 (6th Cir. 2001).

### C.     Request for Relief Under The United Nations Convention   Against Torture

Sin additionally requests relief under the provisions of the United Nations Convention Against Torture. The BIA held that he was not likely to be tortured if returned to his home country. To obtain withholding of removal under that convention, "[t]he burden of proof is on the applicant . . . to establish that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16(c)(2). This burden is significantly greater than the burden required to demonstrate eligibility for asylum. Asylum requires only a "well-founded fear of persecution" whereas withholding of removal under the CAT requires a showing that it is more likely than not that Sin will not only be persecuted upon his return to China, but that he would be tortured. Because Sin cannot demonstrate entitlement to asylum in this case, he also cannot meet

the more stringent requirements under the CAT.  *See, e.g., Liti v. Gonzales*, 411 F.3d 631, 641 (6th

Cir. 2005).

## VI.  <u>Conclusion</u>

We conclude that the BIA's opinion finding no well-founded fear of future persecution was

substantially supported by the evidence contained in the administrative record and was not contrary

to law.  We therefore deny the petition for review.