**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 12a0022n.06

**No. 10–3056**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

***Jan 10, 2012***

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| GOJKO JUNGIC, | ) | |
| | ) | ON PETITION FOR REVIEW |
| Petitioner, | ) | OF AN ORDER OF THE |
| | ) | BOARD OF IMMIGRATION |
| v. | ) | APPEALS |
| | ) | |
| ERIC H. HOLDER, JR., Attorney | ) | |
| General, | ) | **O P I N I O N** |
| | ) | |
| Respondent. | ) | |

---

**Before: GRIFFIN and WHITE, Circuit Judges; and WATSON, District Judge.**[*]

**MICHAEL H. WATSON, District Judge.** Gojko Jungic, a citizen of Bosnia and

Herzegovina, an ethnic Serb, and Orthodox Christian, petitions for review of a decision of the Board

of Immigration Appeals ("BIA") affirming the Immigration Judge's ("IJ") denial of Jungic's

applications for asylum, withholding of removal, and relief under the Convention Against Torture

("CAT"). Jungic served as an ambulance driver during the Bosnian Civil War. After the war, Jungic

began to receive anonymous threats, which he asserts constitute past persecution, and he eventually

came to the United States. The BIA concluded that Jungic's asylum application was untimely, and

that in any event Jungic failed to demonstrate past persecution or a reasonable fear of future

persecution if he returned to Bosnia and Herzegovina. We **DENY** the petition for review because

---

[1]The Honorable Michael H. Watson, United States District Judge for the Southern District
of Ohio, sitting by designation.

we lack jurisdiction to review the BIA's determination of untimeliness, substantial evidence supports

the BIA's denial of withholding of removal, and Jungic waived his claim under the CAT.

## A. Factual Background

Gojko Jungic was born in August 1952 in what was then Yugoslavia, and is now Bosnia and

Herzegovina. Jungic began his own business in Bosnia and Herzegovina in 1988. AR 102–03. The

business consisted of servicing trucks and selling parts, tires, and agricultural equipment. AR 102.

Jungic's business began losing money in about 1996 or 1997, and ceased operation in March or April

of 2003. AR 103.

Jungic served in the military during the Bosnian War from June 1992 until the Dayton Peace

Accords were signed in December 1995. AR 104. Jungic was not involved in the fighting, but drove

a medical van used to transport the wounded. AR 104–05.

Jungic avers that in 1998 or 1999, he began to receive anonymous threats in the form of calls

to his cell phone and written notes left on his car. AR 103–06. He maintains that after the bombing

of Serbia, anonymous callers would say things such as "all of you were at war with us, all of you are

going to pay the same price that the Serbs are paying now in Serbia. We're going to do you all in

and you are the first one." AR 105–07. The notes left on Jungic's car sometimes had a drawing of

a skull and crossbones with Jungic's name underneath. At times the notes were written in Arabic,

which Jungic could not read. He did not attempt to have the notes translated, although he apparently

knew someone who could have done so. AR 106. Jungic indicated he threw the notes away or

burned them. AR 106. Although he was unsure, Jungic indicated he received threats once, twice,

or three times a month. AR 105.

Jungic does not know who made the threats. AR 107. He believes he received the threats because he participated in the war. *Id.* Jungic did not tell anyone about the threats, saying he did not want to burden his family, and never reported them to the police because he believed there was "no point" in doing so. AR 107–08, 119–20. Jungic's younger son, who remains in Bosnia and Herzegovina, also received threats but ignored them. AR 107. Jungic does not indicate that his younger son ever suffered any harm as a result of the threats.

Jungic indicated that if he returned to Bosnia and Herzegovina he would live in fear that someone would attack and kill him. AR 112. He did not know who would attack him, but apparently he suspects a Muslim organization. *Id.*

Jungic entered the United States in December 2004 on a visitor's visa, which permitted him to stay in the United States for six months. AR 97. He received a six-month extension, which expired in December 2005. *Id.* Jungic asserts that he came to the United States because life in Bosnia and Herzegovina was unstable and unsafe. AR 98.

It is undisputed that Jungic filed his application for asylum on August 30, 2006, more than one year after he arrived in the United States, and more than eight months after his extended visa expired. AR 60–61. Jungic explains that he talked with two or three attorneys in Virginia before his visa expired, but the attorneys never took any action on his behalf. AR 109. Jungic also visited an immigration office in Alexandria, Virginia several times but the lines were so long that he abandoned the effort. *Id.* Jungic also sought the advice of his wife's uncle in Virginia, but the uncle was unhelpful. AR 115. One Virginia attorney told Jungic to go to Chicago, Detroit, or Cleveland to solve his immigration issues. AR. 110. Jungic contacted his present attorney in April 2006. *Id.*

## B. Administrative Proceedings

Jungic was issued a notice to appear in April 2007. AR 55–56. He appeared before an IJ in August 2007, at which time he conceded removability. AR 80. The IJ conducted the merits hearing in March 2008. AR 83–127. Jungic was the only witness who testified at the hearing. Jungic also submitted documentary evidence, including State Department Country Reports on Human Rights Practices in Bosnia and Herzegovina for 2006, which indicate the continued existence of religious and ethnic violence and discrimination. AR 138, 145–46, 163–64.

At the conclusion of the hearing, the IJ issued an oral decision denying Jungic's applications for asylum and withholding of removal under the INA and relief under the CAT. AR 55–68. The IJ found that Jungic's application for asylum was time-barred because Jungic failed to file it within a reasonable time after he fell out of status. AR 61.

In the alternative, the IJ determined that Jungic failed to show that he was persecuted on the basis of his race, religion, nationality, membership in a particular social group, or political opinion. AR 62–63. The IJ rejected Jungic's theory that he received the threats because he served in the army during the war because thousands of people served in the army, and there was no indication that such threats were widespread or received by others who similarly served in the military. AR 63. Morever, the IJ noted that Jungic served as an ambulance driver, which is not the type of military service that would likely inspire threats. *Id.*

Further, the IJ found significant that Jungic received the anonymous threats over a period of five to six years, but there was no evidence that anyone attempted to carry out the threats, and Jungic testified that he was never harmed in Bosnia and Herzegovina. AR 64. The IJ additionally noted

that Jungic's son also received threats, but remained in Bosnia and Herzegovina with his wife and children. *Id.* Moreover, the IJ found Jungic's testimony about the threats vague. AR 63, 64. On these bases, the IJ concluded that Jungic failed to demonstrate past persecution, and Jungic was therefore not entitled to a presumption of a well-founded fear of future persecution. AR 64.

The IJ stated he would therefore have denied Jungic's application for asylum even if it had been timely filed. AR 66.

Having found that Jungic failed to satisfy the standard for asylum, the IJ concluded that Jungic failed to meet the more demanding standard for withholding of removal. AR 66–67. Lastly, the IJ ruled that Jungic was not entitled to relief under the CAT because he failed to present evidence showing that it was more likely than not that he would be subjected to torture if he returned to Bosnia and Herzegovina. AR 67.

The BIA agreed with the IJ that Jungic failed to file his application for asylum within a reasonable period of time after his visitor's visa expired. AR 3. The BIA also agreed with the IJ that Jungic failed to demonstrate that he was persecuted on the basis of a statutorily-protected ground, stating that the anonymous threats Jungic described were "too vague to indicate that the callers attributed a political opinion to [Jungic] or that they targeted him on account of his race, religion, nationality or membership in a particular social group." AR 4. The BIA further concluded that Jungic did not satisfy the standards of proof for withholding of removal or relief under the CAT. *Id.* Although the IJ questioned Jungic's veracity in several respects, the BIA assumed Jungic's credibility. AR 3.

Jungic timely filed his petition for review of the BIA's decision by this Court.

**II.**

We have jurisdiction to review the BIA's final order of removal under § 242 of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1252. When the BIA issues its own separate opinion rather than summarily affirming the IJ's decision, we review the BIA's decision as the final agency determination. *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009). We review the BIA's legal conclusions de novo and its factual findings under the substantial evidence standard. *Zhao v. Holder*, 569 F.3d 238, 246 (6th Cir. 2009). The substantial evidence standard requires us to uphold the BIA's factual findings if they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Id.* at 247. We will not overturn the BIA's factual determinations merely because we would have decided the matter differently. *Kaba v. Mukasey*, 546 F.3d 741, 747 (6th Cir. 2008). Rather, to reverse a factual finding, the record evidence must not only support reversal, but must compel it. *Id.*

**III.**

**A. The Court Lacks Jurisdiction to Review the BIA's Timeliness Determination**

Jungic argues the BIA erred when it ruled that his application for asylum was untimely because he filed it within a reasonable time after he fell out of status. Respondent contends we lack jurisdiction to consider the BIA's timeliness determination because Jungic does not present a colorable constitutional claim.

The REAL ID Act of 2005 limits our review of the denial of an application for asylum as untimely. *See* 8 U.S.C. § 1158(a)(3). "'No court shall have jurisdiction to review any determination of the Attorney General regarding whether extraordinary circumstances exist to excuse the filing of

an asylum application beyond one year after arrival in the United States.'" *Vincent v. Holder*, 632 F.3d 351, 353 (6th Cir. 2011) (quoting 8 U.S.C. § 1158(a)(3)). The jurisdictional bar applies when the appeal seeks review of discretionary or factual issues; it does not bar review of constitutional issues or questions of statutory construction. *Id.*

Here, Jungic arrived in the United States on a six-month visitor's visa in December 2004. Jungic later obtained a six-month extension of the visa. He filed his first application for asylum on August 30, 2006, more than eight months after his visa expired. The IJ found that Jungic failed to file his application within a reasonable period of time after Jungic fell out of status. The BIA agreed.

Although he notes that purely legal questions are subject to *de novo* review, Jungic makes no serious attempt to cast his challenge to the BIA's timeliness determination as a constitutional issue or a matter of statutory construction. The BIA considered the facts and determined, in its discretion, that Jungic's application was untimely. Consequently, we lack jurisdiction to review the BIA's timeliness determination. 8 U.S.C. 1158(a)(3); *Vincent*, 632 F.3d at 353.

**B.      Withholding of Removal and Relief Under the CAT**

Respondent argues that Jungic waived any challenge to the BIA's denial of his application for withholding of removal and his claim for relief under the CAT because he failed meaningfully to address those claims in his opening brief. In addition, Respondent contends the record does not compel reversal of the BIA's decision denying withholding of removal.

### 1. Waiver

Claims for nondiscretionary relief are deemed waived where a petitioner mentions them only in his statement of issues and fails to present any argument on the claims. *See Shkabari v. Gonzales*, 427 F.3d 324, 327 n.1 (6th Cir. 2005).

Respondent is correct that Jungic does not set forth an extensive, separate discussion of withholding of removal. Nevertheless, Jungic thoroughly discusses his assertion that he established past persecution and that he has a reasonable fear of future persecution, and expressly contends he meets the heightened standard for withholding of removal. "Courts employ the same basic framework for evaluating an alien's eligibility for asylum as they do for withholding of removal under the INA, 'but in the case of withholding, a higher probability of persecution is required.'" *Dugboe v. Holder*, 644 F.3d 462, 471 (6th Cir. 2011) (quoting *Castellano-Chacon v. INS*, 341 F.3d 533, 545 (6th Cir. 2003)). Thus, both asylum and withholding of removal hinge on past persecution and the prospect of future persecution, albeit with different standards of proof. By addressing persecution in detail, and also asserting twice that he met the heightened standard for withholding of removal, Jungic avoids waiver. We will therefore address the merits of Jungic's withholding claim.

Jungic has, however, waived his claim for relief under the CAT. He makes only passing reference to that claim, and fails meaningfully to explain why "it is more likely than not that he would be tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16(c)(3); *Dugboe*, 644 F.3d at 472. We deem Jungic's claim under the CAT waived. *Shkabari*, 427 F.3d at 327 n.1.

## 2.     Substantial Evidence Supports Denial of Withholding of Removal

Jungic argues he satisfied the heightened standard for withholding of removal. He also challenges the IJ's adverse credibility finding.[1]  Respondent contends that even if Jungic did not waive review of the denial of his withholding claim, substantial evidence supports the BIA's finding that Jungic failed to demonstrate that he suffered persecution on account of a protected ground.  8 U.S.C. § 1231(b)(3)(A).

"[T]he Attorney General may not remove an alien to a country if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion."  8 U.S.C. § 1231(b)(3)(A); *see Dugboe*, 644 F.3d at 471.  "The alien must show a 'clear probability' of persecution."  *Dugboe*, 644 F.3d at 472 (citing *Liti v. Gonzales*, 411 F.3d 631, 640–41 (6th Cir. 2005)); *see also Pablo-Sanchez v. Holder*, 600 F.3d 592, 594 (6th Cir. 2010).

> Persecution is defined as "the infliction of harm or suffering by the government, or persons the government is unwilling or unable to control, to overcome a characteristic of the victim," *Bonilla-Morales v. Holder*, 607 F.3d 1132, 1136 (6th Cir. 2010) (citation omitted), and "requires more than a few isolated incidents of verbal harassment or intimidation, unaccompanied by any physical punishment, infliction of harm, or significant deprivation of liberty." *Mikhailevitch v. INS*, 146 F.3d 384, 390 (6th Cir. 1998); *see also Gilaj v. Gonzales*, 408 F.3d 275, 285 (6th Cir. 2005).

*Hamzah v. Holder*, 428 F. App'x 551, 556 (6th Cir. 2011).  Under that standard, vague threats and harassment do not equate to persecution.  *See Kai Hun Sin v. Mukasey*, 294 F. App'x 203, 208 (6th

---

[1] Jungic's challenge to the IJ's adverse credibility finding does not merit extended discussion. First, the BIA did not adopt the IJ's adverse credibility finding, but assumed Jungic was credible. *See* AR 3–4.  Second, as set forth below, even if the Court accepts that Jungic testified credibly, substantial evidence supports the agency's denial of his claim for withholding of removal.

Cir. 2008). Similarly, vague and anonymous threats not specifically tied to a statutorily-protected ground do not demonstrate persecution. *Sedrakyan v. Gonzales*, 237 F. App'x 76, 84 (6th Cir. 2007); *see also Nahrvani v. Gonzales*, 399 F.3d 1148, 1153 (9th Cir. 2005) (vague, anonymous threats, with no indication of immediate harm, do not constitute persecution). In addition, threats must be motivated on the basis of a statutorily-protected ground to rise to the level of persecution. *See Bonilla-Morales v. Holder*, 607 F.3d 1132, 1138 (6th Cir. 2010).

Even assuming Jungic's credibility, the vague threats he received fall far short of establishing either past persecution or a clear probability of future persecution. The most specific threat Jungic described was that after the bombing of Serbia began, anonymous callers said "all of you were at war with us, all of you are going to pay the same price that the Serbs are paying now in Serbia. We're going to do you all in and you are the first one." AR 105–07. Jungic also received notes on his car with skulls and crossbones and with Arabic writing, which Jungic could not read and never attempted to have translated. Although Jungic asserts he received the threats because he served in the military, his assertion amounts to pure speculation. Moreover, as the IJ observed, driving an ambulance during the war would not likely provoke persecution. Jungic also suggests he received the threats because he is an Orthodox Christian. Nothing about the alleged threats, however, suggests that they were motivated by religious animus. In addition, the mere fact that some of the notes Jungic received were written in Arabic does not indicate the threats were made because Jungic is a Christian, or that he is the target of a Muslim organization, as Jungic surmises. It is equally plausible the threats were the result of general civil strife following the war. In sum, the threats

Jungic received were vague and do not sufficiently implicate a protected ground. Hence, the evidence of the threats does not compel reversal of the BIA's decision.

In addition, Jungic's claim of persecution is undercut because he remained in Bosnia and Herzegovina for five or six years after he began receiving the threats. *See Almuhtaseb v. Gonzales*, 453 F.3d 743, 750 (6th Cir. 2006). Jungic's claim is further undermined because his son also received threats, but chose to ignore them and still lives in Bosnia and Herzegovina. *See Abudaya v. Holder*, 393 F. App'x 275, 283 (6th Cir. 2010). For those additional reasons, substantial evidence supports the BIA's denial of Jungic's application for withholding of removal.

## VII. CONCLUSION

In the absence of a constitutional issue or other purely legal question, we lack jurisdiction to review the BIA's determination that Jungic's application for asylum was untimely. Moreover, the record evidence does not compel the conclusion that in denying Jungic's claim for withholding of removal, the BIA erred in finding that Jungic failed to establish past persecution or a clear probability of future persecution. In addition, Jungic waived his claim for relief under the CAT because he failed meaningfully to discuss that claim in his brief before this Court. Accordingly, we **DENY** Jungic's petition for review.