**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 12a0833n.06

**No. 11-3595**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

FARHAT GAZIEV;
KRISTINA MACENAVICIUTE,

     Petitioners,

v.

ERIC H. HOLDER, JR., Attorney General,

     Respondent.

_____/

**FILED**

*Aug 02, 2012*

LEONARD GREEN, Clerk

ON PETITION FOR REVIEW OF AN ORDER OF THE BOARD OF IMMIGRATION APPEALS

BEFORE:    GUY and CLAY, Circuit Judges; HOOD, District Judge.[*]

    **CLAY, Circuit Judge.**  Petitioner Farhat Gaziev and his derivative beneficiary Kristina Macenaviciute appeal an order of the Board of Immigration Appeals (BIA) affirming the decision of an immigration judge (IJ) to deny Gaziev's application for asylum and Macenaviciute's request for withholding of removal as a derivative beneficiary. Petitioners also appeal the BIA's rejection of their claim that the IJ violated their Fifth Amendment due process rights by excluding their proposed expert testimony at the removal hearing. For the reasons that follow, we **AFFIRM**.

_____

[*]The Honorable Denise Page Hood, United States District Judge for the Eastern District of Michigan, sitting by designation.

1

## BACKGROUND

On October 29, 1999, Gaziev, a native and citizen of Kyrgyzstan, was admitted to the United States on a B-1 visitor visa and was authorized to remain until January 28, 2000. Gaziev never departed. In 2006, he married Macenaviciute, a native and citizen of Lithuania, who was admitted to the United States on November 18, 2002 as a nonimmigrant visitor. Unknown to the agency at the time of her entry, Macenaviciute fraudulently used a visa issued to her sister to obtain admission to the United States. Macenaviciute also overstayed her visa.

The government eventually initiated removal proceedings against Gaziev for overstaying his visitor visa, making him removable under the Immigration and Nationality Act (INA) § 237(a)(1)(B), 8 U.S.C. § 1227(a)(1)(B), and against Macenaviciute for fraudulently obtaining admission to the United States, making her removable under INA § 237(a)(1)(A), 8 U.S.C. § 1227(a)(1)(A). Petitioners appeared before the IJ and conceded removability, but expressed their desire to file applications for asylum and withholding of removal. Gaziev filed a Form I-589 application for asylum and withholding of removal on the basis that he was persecuted and will continue to be persecuted in his native Kyrgyzstan because of his ethnicity, religion, and political beliefs. Macenaviciute sought asylum and withholding of removal only as a derivative beneficiary of Gaziev. Petitioners requested that their hearing be continued in order to locate an expert who would testify as to worsened country conditions in Kyrgyzstan. The IJ ordered that Petitioners present their expert's curriculum vitae (CV) prior to the next hearing. Petitioners secured their expert but failed to comply with the IJ's order, so the IJ refused to permit the expert's testimony.

The following evidence was presented at the removal hearing: Petitioners live in Tennessee with their two-year-old, United States citizen son. Gaziev's ethnicity is Uzbek, and his religion is Islam, placing him in a minority of 10–15% of the population in Kyrgyzstan. Uzbeks in Kyrgyzstan have been discriminated against, harassed and threatened, robbed, and even killed. Uzbek businessmen are particularly targeted because the Kyrgyzs (the majority ethnicity) retaliate against successful minorities. Gaziev was a businessman, first owning a restaurant and later a sewing company. Gaziev testified that in 1998 and 1999, Kyrgyz officers essentially stole his businesses by forcing him to "sell" those businesses to high-ranking officials at an unfair price. Gaziev initially pushed back, but the officers physically assaulted him four times, and he was hospitalized twice. He was falsely charged with crimes in 1998 and 1999, but was released each time for lack of evidence. He filed a complaint against the Kyrgyz government, but it too was dismissed for lack of evidence.

Gaziev also alleged that in 2004 he became a supporter of a political party called the Ar-Namys Opposition Party, which is purportedly more sympathetic to Uzbeks. Gaziev has attended several of the party's conferences in the United States, has financially supported the party, and has written online articles in support of the party, albeit signing only his initials or first name. Gaziev admitted, however, that he has never formally joined the party.

Petitioners also presented evidence of the recent conditions in Kyrgyzstan. In 2004, Kurmanbek Bakiyev emerged as the country's de facto dictator.[1] Under Bakiyev, government hostility to Uzbeks escalated. In 2005, there was a massacre in Andijan, Uzbekistan, which forced

---

[1]The government changed hands in December 2011.

Uzbekistan citizens to flee into neighboring Kyrgyzstan. The Kyrgyz authorities prevented the entry of most refugees. In 2007, many Uzbekistan refugees that had been able to cross the border were returned to Uzbekistan by the Kyrgyz government in violation of a United Nations agreement. According to Petitioners, these events made the situation of Uzbeks in Kyrgyzstan even worse.

Following the presentation of this evidence, the IJ found Gaziev to be credible and sympathized with him as "a very sincere person" who was persecuted "because of his ethnicity." Nonetheless, the IJ found that Gaziev's asylum application was untimely and that he had waited an unreasonable length of time to file the application following the events that caused the changed country conditions. The IJ denied Gaziev asylum and, consequently, denied Macenaviciute's request for asylum as a derivative beneficiary. However, the IJ granted Gaziev's application for withholding of removal, determining that Gaziev could not be removed to Kyrgyzstan on the basis of the persecution that he would suffer there as an ethnic Uzbek. The IJ denied Macenaviciute withholding of removal because she had not filed her own I-589 application and because the immigration regulations do not permit derivative beneficiary status for withholding of removal. Ultimately, the IJ ordered Gaziev removed to any country other than Kyrgyzstan and ordered Macenaviciute removed to Lithuania. Petitioners appealed the IJ's decision, and the BIA affirmed.

**DISCUSSION**

As an initial matter, we note that it is unclear whether Petitioners request our review of the IJ's and BIA's decision to deny Gaziev's asylum application as untimely. To the extent that Petitioners do so, our jurisdiction is explicitly precluded by Congress. 8 U.S.C. § 1158(a)(3). Under § 1158(a), we may not review any determination that an asylum application is untimely or that the

applicant has failed to prove changed country conditions which would excuse an untimely application. *See Jungic v. Holder*, No. 10-3056, 2012 U.S. App. LEXIS 615, at \*9–10 (6th Cir. Jan. 10, 2012); *Vincent v. Holder*, 632 F.3d 351, 353 (6th Cir. 2011); *Almuhtaseb v. Gonzales*, 453 F.3d 743, 748 (6th Cir. 2006). Of course, the limitation on our jurisdiction does not extend to constitutional challenges or matters of statutory construction, *Vincent*, 632 F.3d at 353, so we may consider Petitioners' remaining claims.

### A. Macenaviciute's Derivative Application for Withholding of Removal

Petitioners first argue that the BIA erred in denying Macenaviciute derivative beneficiary status to Gaziev's application for withholding of removal, because the BIA wrongly interpreted 8 C.F.R. § 1208.16(e) as providing no basis for withholding of removal to derivative beneficiaries. This Court "grant[s] substantial deference to the BIA's interpretation of the INA and accompanying regulations." *Morgan v. Keisler*, 507 F.3d 1053, 1057 (6th Cir. 2007) (citing *Sad v. INS*, 246 F.3d 811, 814 (6th Cir. 2001)). "The BIA's interpretation of the statute and regulations will be upheld unless the interpretation is 'arbitrary, capricious, or manifestly contrary to the statute.'" *Morgan*, 507 F.3d at 1057 (citation omitted).

The pertinent regulation provides:

> Reconsideration of discretionary denial of asylum. In the event that an applicant is denied asylum solely in the exercise of discretion, and the applicant is subsequently granted withholding of deportation or removal under this section, thereby effectively precluding admission of the applicant's spouse or minor children following to join him or her, the denial of asylum shall be reconsidered. Factors to be considered will include the reasons for the denial and reasonable alternatives available to the applicant such as reunification with his or her spouse or minor children in a third country.

8 C.F.R. § 1208.16(e). Both the IJ and the BIA reasonably interpreted § 1208.16(e) to apply only to the reconsideration of an asylum application with derivative beneficiaries. Because Petitioners do not seek reconsideration of Gaziev's *asylum* application, but rather permission for Macenaviciute to obtain derivative beneficiary status to Gaziev's application for *withholding of removal*, the regulation does not apply. Of course, the plain language of § 1208.16(e) does not create a derivative beneficiary status to applications for withholding of removal, so the regulation also does not provide the mechanism for relief that Petitioners seek. *See Castellano-Chacon v. INS*, 341 F.3d 533, 545 (6th Cir. 2003); *Arif v. Mukasey*, 509 F.3d 677, 682 (5th Cir. 2007); *Matter of A–K–*, 24 I. & N. Dec. 275, 279 (BIA 2007) (noting that the INA "does not permit derivative withholding of removal under any circumstances"). More importantly, the IJ's reconsideration of an asylum application is permitted only where that application was denied "solely" in the IJ's "exercise of discretion." 8 C.F.R. § 1208.16(e). In this case, however, the IJ repeatedly and explicitly emphasized that Gaziev's asylum application "is not being denied in the exercise of discretion" but "for a legal reason." Petitioners have failed to establish that the agency's interpretation of the regulation was arbitrary, capricious, or manifestly contrary to its plain language. Accordingly, we find no error with the BIA's decision.

## B. Petitioners' Due Process Claim

We review *de novo* "an alleged due-process violation based upon the manner in which an IJ conducts a deportation hearing." *Mikhailevitch v. INS*, 146 F.3d 384, 391 (6th Cir. 1998); *Vasha v. Gonzales*, 410 F.3d 863, 872 (6th Cir. 2005). The Due Process Clause of the Fifth Amendment provides that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of

law." U.S. Const. amend. V. This Court has held that due process entitles an alien to a full and fair removal proceeding. *Huicochea-Gomez v. INS*, 237 F.3d 696, 699 (6th Cir. 2001). "[R]eviewing an alleged due process violation is a two-step inquiry: first, whether there was a defect in the removal proceeding; and second, whether the alien was prejudiced because of it." *Vasha*, 410 F.3d at 872. We find that Petitioners have failed to meet their burden under either inquiry.

Petitioners argue that the IJ's refusal to permit their expert testimony constituted a defect in their removal proceedings. "In immigration proceedings, an applicant is 'entitled to a reasonable opportunity to examine the evidence against him, to present evidence on his own behalf, and to cross-examine witnesses presented by the Government.'" *Singh v. Ashcroft*, 398 F.3d 396, 406 (6th Cir. 2005) (citing *Mikhailevitch*, 146 F.3d at 391) (internal quotation marks omitted). However, the Federal Rules of Evidence do not apply to immigration proceedings, and the IJ has "broad discretion" in conducting its hearings. *Singh*, 398 F.3d at 406; *Ahmed v. Gonzales*, 398 F.3d 722, 725 (6th Cir. 2005). Although Petitioners admit that they violated the IJ's order directing them to provide the court and the government with their expert's CV prior to the hearing, they argue that the IJ abused its discretion by finding that the government would be unable to conduct effective cross-examination without reviewing the CV prior to the hearing. We disagree. This Court has previously upheld an IJ's decision to exclude evidence where the petitioners did not comply with filing deadlines and did not show good cause for their mistake. *See Hassan v. Gonzales*, 403 F.3d 429, 436 (6th Cir. 2005); *see also Singh*, 398 F.3d at 406–407 (finding no due process violation where the IJ excluded expert witness testimony because the petitioner did not provide appropriate documentation in support of the expert in advance of the removal hearing). Petitioners here failed

to comply with the IJ's order and have not provided any excuse for their failure to do so. The IJ did not abuse its broad discretion in conducting its removal proceedings when it set a reasonable deadline for submitting evidence and enforced that deadline. *Id.*

Moreover, even if the IJ's decision was in error, Petitioners were not prejudiced by that decision. *Al-Ghorbani v. Holder*, 585 F.3d 980, 992–93 (6th Cir. 2009) ("[A]n alien must demonstrate that a constitutional error caused actual prejudice; i.e., that the error materially affected the outcome of the alien's case."); *Huicochea-Gomez*, 237 F.3d at 699 ("To constitute fundamental unfairness . . . a defect in the removal proceedings must have been such as might have led to a denial of justice." (internal quotation marks omitted)). Gaziev's asylum application was denied because it was untimely. He argues that his expert would have shown changed country conditions necessary to excuse the late filing. However, despite the IJ's refusal to permit the expert's testimony, the IJ acknowledged the new circumstances presented by Petitioners: the Kyrgyz government coup in 2004, Gaziev's minor support of the Ar-Namys party, the publication of Gaziev's articles in 2004 and 2005, the 2005 Andijan Massacre, and the Uzbekistan refugee incident in 2007. The IJ nonetheless decided that most of these circumstances were not directly applicable to Petitioners' need for asylum, and "[i]n any event, those events that [Gaziev] has described still took place more than a reasonable time prior to his filing for asylum." We thus find it clear that the IJ denied the asylum application "as a matter of law, due to the lateness of [Gaziev's] application," even accepting Petitioners' changed circumstances argument. The proposed expert would not have altered this determination. Without a defect or resulting prejudice, Petitioners' due process claim fails.

## **CONCLUSION**

For the reasons discussed above, we **AFFIRM** the BIA's order.