NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0238n.06

Case No. 22-4067

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| MOHAMED NASRELDEEN, | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | ON PETITION FOR REVIEW |
| | ) | FROM THE UNITED STATES |
| | ) | BOARD OF IMMIGRATION |
| MERRICK B. GARLAND, Attorney General, | ) | APPEALS |
| Respondent. | ) | |
| | ) | O P I N I O N |
| | ) | |

FILED
Jun 04, 2024
KELLY L. STEPHENS, Clerk

Before: COLE, GIBBONS, and READLER, Circuit Judges.

COLE, Circuit Judge. Petitioner Mohamed Nasreldeen is a native citizen of Egypt who applied for withholding of removal as defined in the Immigration and Nationality Act (INA), and for protection under the Convention Against Torture (CAT). After initiating removal proceedings and holding an administrative hearing in 2022, an immigration judge (IJ) found that Nasreldeen's claims for relief did not meet the relevant standards. The Board of Immigration Appeals (Board) issued its own opinion in May 2022, affirming on both points.

Nasreldeen petitioned this Court for review, arguing that the Board's analysis with respect to his withholding claim was incorrect. Because there was substantial evidence in the record supporting both of the Board's conclusions, we deny his petition for review.

I.

Nasreldeen is a native citizen of Egypt who, through marriage to a United States citizen in 2016, obtained a visa and an eventual grant of advanced parole to legally remain in the United

States until February 2018. After the expiration of his advanced parole in 2018, Nasreldeen submitted another request for advanced parole in November 2020 because he planned to return to Egypt the following year. But his second request was denied.

Later, on January 17, 2022, while a passenger in a vehicle, Nasreldeen was arrested during an attempt to enter Detroit, Michigan from the Canadian side of the Ambassador Bridge. In addition to the fact that his advanced parole was expired, Nasreldeen was carrying a baggie of cocaine at the time of his arrest. Removal proceedings commenced on January 25, 2022, and Nasreldeen applied for withholding of removal as defined by the INA and protection under the regulations implementing the CAT.

During the IJ's hearing, Nasreldeen's claims for relief centered on his political activism surrounding Egyptian governmental affairs. He stated that he was a politically active opponent of the Egyptian government and alleged that he was arrested, but not harmed, in 2002 and 2004 for his activism. Nasreldeen also claimed that he broke his collarbone during encounters with the Egyptian authorities while protesting in 2012. He presented no evidence that he was prosecuted for any of the crimes for which he was arrested, nor did he provide documentary evidence of his alleged collarbone injury or consequent surgery. The record further reflected that Nasreldeen returned to Egypt of his own accord on four separate occasions in 2011, 2014, 2015, and 2016.

Nasreldeen also argued that his political activism in the United States put him at risk should he be removed to Egypt. One witness, Sawsan Gharib, explained that Nasreldeen worked with and was responsible for social media postings on behalf of the "April 6th Youth Movement" (A6YM), an anti-Egyptian government organization; Gharib claimed that Nasreldeen used an alias while posting because he feared potential repercussions from the Egyptian government.

Conversely, Nasreldeen's wife testified that he frequently used his real name when posting for A6YM. Nasreldeen did not present any evidence of the actual social media posts.

Lastly, Nasreldeen attempted to present Mohamed Lofty, executive Director of the Egyptian Commission for Rights of Freedom (ECRF), as an expert witness to testify about country conditions in Egypt and the "original roots of A6YM." (*See* Appellant Br. at 14−15); (AR 426−27). The IJ explained, however, that "[t]here was no way [the IJ] could possibly determine whether or not [Lofty] was qualified as an expert" because there was no "C.V." or additional evidence submitted regarding Lofty's background. (*Id.* at 427). The IJ instead allowed Lofty to testify as a fact witness and found his testimony credible. But Lofty—despite not being afforded expert status—still attempted to provide opinion testimony in a manner similar to an expert. As such, the IJ determined that Lofty "provided little if any relevant testimony as a fact witness as there was virtually nothing that [Lofty] perceived [himself] that he testified about." (*Id.*)

On May 27, 2022, the IJ issued an oral decision denying Nasreldeen's withholding application and request for CAT protection. The IJ found that Nasreldeen was credible overall, but emphasized the many inconsistencies in the record that "called into question his credibility," which was "relevant to the issue of corroboration." (AR 416−18). The IJ concluded that Nasreldeen did not meet his burden of establishing past persecution or a likelihood of future persecution in Egypt. (AR 428−31). Regarding the CAT, the IJ concluded that Nasreldeen had not shown that it was more likely than not that he would be tortured if he returned to Egypt. (AR 431).

The Board issued its own decision on November 8, 2022, dismissing Nasreldeen's appeal and affirming the IJ's denial of his claims for withholding of removal and protection under the

CAT. Nasreldeen was removed to Egypt on January 26, 2023. Nasreldeen filed this timely petition.

## II.

This court has jurisdiction under 8 U.S.C. § 1252 to review the Board's final determination ordering removal. *Umaña-Ramos v. Holder*, 724 F.3d 667, 670 (6th Cir. 2013). We review the Board's decision where, as here, the Board issued its own decision instead of summarily affirming the IJ. *Id.* Factual findings are reviewed under the substantial-evidence standard, and questions of law are reviewed de novo. *Id.* Under the substantial-evidence standard, "we uphold a [Board] determination as long as it is 'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" *See Marku v. Ashcroft*, 380 F.3d 982, 986 (6th Cir. 2004) (quoting *INS v. Elias–Zacarias*, 502 U.S. 478, 481 (1992)). Further, "we will not reverse a factual determination . . . unless we find 'that the evidence not only supports a contrary conclusion, but *compels* it.'" *Ceraj v. Mukasey*, 511 F.3d 583, 588 (6th Cir. 2007) (quoting *Marku*, 380 F.3d at 986).

## III.

### A.

Nasreldeen requested withholding of removal under the INA. *See* 8 U.S.C. § 1231(b)(3). For the withholding claim, the only issue on appeal is whether Nasreldeen has met his burden of future persecution.[1] "[W]ithholding of removal is mandatory if the applicant can establish a clear probability of future persecution." *Mapouya v. Gonzales*, 487 F.3d 396, 413–14 (6th Cir. 2007).

---

[1] The Board held that Nasreldeen did not "meaningfully contest the [IJ's] determination that [he] did not establish that he suffered past mistreatment rising to the level of persecution under the INA." (AR 004). Nasreldeen acknowledges on appeal that his "past persecution claim" has been "effectively abandoned." (*See* Appellant Br. at 10−11) (stating "the exclusive focus of petitioner's arguments on appeal relate[s] to his activities with [A6YM] after arriving in the United States in February of 2017 . . . .")

And "[a] 'clear probability' has been defined as more than a 50 percent likelihood of persecution." *Id.* at 414 (quoting *INS v. Stevic*, 467 U.S. 407, 413 (1984)). Further, we have explained that withholding of removal "poses a 'higher burden' than asylum related only to the former's steeper requirement of more-likely-than-not persecution." *See Guzman-Vazquez v. Barr*, 959 F.3d 253, 274 (6th Cir. 2020) (explaining "the more difficult burden facing a withholding applicant on the question of likelihood of persecution"). Nasreldeen has not shown a clear probability of future persecution under this more stringent standard.

Nasreldeen argues that the Board, in an "attempt to boost its conclusion," focused its analysis "almost exclusively on the past persecution claim that [was] presented during trial but effectively abandoned on appeal." (Petitioner Br. at 11). Nasreldeen takes issue with the Board's analysis because he believes his previous allegations surrounding past persecution, which focused on "facts that pre-dated his entry to the United States in 2017," were his "weakest claim[s] of persecution." (*Id.* at 10−11). Regarding his allegations of future persecution, Nasreldeen, instead believes his "stronger post-2017 reentry involvement with the A6YM and the severe consequences attendant to his active participation on the movement" is what warrants relief under the withholding and CAT standards. (*Id.* at 12.) To summarize, Nasreldeen essentially claims that his political involvement with A6YM in the United States presents a threat of future persecution, and he argues that the Board ignored these arguments. (*Id.*)

Nasreldeen misinterprets the Board's analysis. The Board provided two separate reasons for its conclusion that Nasreldeen did not demonstrate a clear probability of future persecution. First, contrary to Nasreldeen's assertion, the Board cited multiple points in the record concerning post-2017 events when concluding that Nasreldeen failed to establish a clear probability of future persecution. (AR 004−05.) Second, the Board found that Nasreldeen "did not meet his burden of

proof [because] he did not sufficiently corroborate his claim with reliable evidence." (*Id.*). Both of the Board's conclusions are supported by substantial evidence, and we address them in turn.

1.

First, due to insufficient evidence in the record, the Board agreed with the IJ's "conclusion that the respondent [did] not me[e]t his burden, in the absence of past persecution, of establishing a clear probability of future persecution by Egyptian government officials." (AR 004). As a preliminary matter, although not a dispositive factor, Nasreldeen's frequent trips to Egypt undermine his argument regarding future persecution. *See Vasili v. Holder*, 442 F. App'x 203, 207 (6th Cir. 2011) (where Petitioner voluntarily returned to Albania on two separate occasions, "such returns undermine[d] the[ir] claim of a well-founded fear of future persecution"); *see also Bleta v. Gonzales*, 174 Fed. App'x 287, 292 (6th Cir. 2006) (returning to Albania at least three times during the period of alleged persecution supported Board determination that Petitioner had not demonstrated threat of future persecution).

Here, it was appropriate for the Board to consider these returning trips as a significant factor in their future persecution analysis. The Board highlighted that Nasreldeen "return[ed] to Egypt on four separate occasions in 2011, 2014, 2015, and 2016," and that the latter three trips "occurred after the most serious [allegations]—injury to [his] collarbone—in November of 2012[,] apparently without further indication of being personally threatened, physically harmed, or persecuted by government officials." (AR 004). Further, "even though [Nasreldeen] testified that he did not plan to" return to Egypt in 2021 "because of the danger," his wife contrarily testified "that he was eager to go and planned to go even though this danger existed." (*Id.*) Given that Nasreldeen applied for permission in 2020 to return to Egypt the next year, the Board agreed with the IJ that Nasreldeen most likely intended to go. (*Id.*)

Nasreldeen's four trips to Egypt without consequence, in conjunction with some suggestions in the record that he intended to return to Egypt in 2021, provided substantial evidence for the Board to conclude that he had not shown a clear probability of future persecution. *See Ceraj*, 511 F.3d at 588 (stating we only reverse if "the evidence not only supports a contrary conclusion, but *compels* it") (quotation omitted).

2.

Second, the Board found that Nasreldeen "did not meet his burden of proof [because] he did not sufficiently corroborate his claim[s] with reliable evidence." (AR 004−05.) The Board agreed with the IJ's determination that there was insufficient, or contradictory, evidence in the record to prove Nasreldeen's allegations about (1) his broken collarbone and (2) the extent of his social media activity and involvement with the A6YM group. (AR 005−06). The Board further explained that there was no evidence in the record proving Nasreldeen's "claims that the Egyptian security forces threatened him through social media to . . . stop his activities in the United States," and also noted that Nasreldeen's "wife testified that [he] used his real name when [creating] social media posts and videos." (*Id.*)

In answering this question, "[a] reviewing court may not reverse an agency finding as to the availability of corroborating evidence unless the court finds a reasonable trier of fact would be compelled to conclude that such evidence is unavailable." *See Guzman-Vazquez*, 959 F.3d at 264 (citing *Fisenko v. Holder*, 336 F. App'x 504, 510 (6th Cir. 2009)). Thus, "[o]ur review is limited to the question of whether the IJ's and [Board's] determination that [Nasreldeen] failed to demonstrate why corroborative evidence was unavailable was supported by substantial evidence." *See id*.

In Nasreldeen's case, he has "simply provided no reason to the IJ or BIA for [his] failure to [provide] probative testimony or affidavits from relevant witnesses." *See id.* (collecting cases where applicants for removal did not provide sufficient corroborating evidence or an explanation thereto). As the Board noted, Nasreldeen did not provide evidence corroborating his claims about his broken collarbone, his social media posts on behalf of A6YM, or the online threats he received from Egyptian security forces due to his political activism. (AR 005−06). The Board's determination that Nasreldeen did not provide an adequate explanation for the absence of corroborating evidence was thus supported by substantial evidence.

B.

Nasreldeen also alleges a due process violation, claiming that the IJ erred by not affording expert status to Lofty, executive director of the ECRF. As detailed above, the IJ explained that "[t]here was no way [the IJ] could possibly determine whether or not [Lofty] was qualified as an expert" because Nasreldeen did not provide a "C.V." or other evidence outlining Lofty's background. (*Id.* at 427). The IJ nonetheless permitted Lofty to testify as a fact witness, but this testimony was not probative because Lofty provided only opinion testimony or discussed events that he had not witnessed himself. The Board agreed with the IJ, explaining that an IJ has broad discretion in making the expert witness determination, and also concluding—in the alternative—that Nasreldeen did not show prejudice because Lofty was still permitted to testify.

We also find Nasreldeen's argument unpersuasive. Claims of due-process violations in removal proceedings are reviewed de novo. *Bi Qing Zheng v. Lynch*, 819 F.3d 287, 296 (6th Cir. 2016). Plainly, there is not a due process violation where, as here, Nasreldeen did not provide the IJ with the necessary credentials to make the expert witness determination in the first place. Indeed, in an analogous case, we upheld an IJ's "refusal to permit [petitioner's] expert testimony"

where the petitioner "violated the IJ's order directing them to provide the court and the government with their expert's CV prior to the hearing." *See Gaziev v. Holder*, 490 F. App'x 761, 765 (6th Cir. 2012).

Even if Nasreldeen did not violate the IJ's rules, there is nonetheless—as explained above—substantial evidence in the record supporting the Board's determination that he cannot show a clear probability future persecution. Nasreldeen therefore cannot prove "that his 'claims could have supported a different outcome,'" and his due process claim fails as a result. *See Mendoza-Garcia v. Barr*, 918 F.3d 498, 508 (6th Cir. 2019) (quoting *Sako v. Gonzales*, 434 F.3d 857, 864 (6th Cir. 2006)) (stating "procedural due process claim[s] requir[e] a showing of prejudice") (citing *Graham v. Mukasey*, 519 F.3d 546, 549–50 (6th Cir. 2008)).

IV.

Finally, Nasreldeen sought relief from the IJ under the regulations implementing the CAT. To succeed on this claim, Nasreldeen "must 'establish that it is more likely than not that [he] would be tortured if removed to the proposed country of removal. The testimony of the applicant, if credible, may be sufficient to sustain the burden of proof without corroboration.'" *Namo v. Gonzales*, 401 F.3d 453, 457 (6th Cir. 2005) (quoting 8 C.F.R. § 208.16(c)(2)). Nasreldeen makes no argument on appeal that he will be subjected to torture if removed to Egypt, and he likewise does not challenge the Board's conclusion of the same. We therefore agree with the Board that Nasreldeen has not met his burden on this claim.

V.

Because there was substantial evidence in the record supporting the Board's determination on both claims, we deny the petition to review the Board's order.